UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND; TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND; *and* THE CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK,

Petitioners,

– *against* –

PERRYGREEN, LTD.,

Respondent.

**OPINION & ORDER**

25-cv-07765 (ER)

RAMOS, D.J.:

Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; Trustees of the New York City Carpenters Relief and Charity Fund; and the Carpenter Contractor Alliance of Metropolitan New York (collectively, the "Funds" and "Petitioners") filed this action pursuant to § 301 of the Labor Management Relations Act of 1947 ("LMRA") to confirm an arbitration award against Perrygreen, Ltd. ("Perrygreen"). For the reasons set forth below, the motion to confirm is GRANTED, and the cross-motion to vacate or modify the award is DENIED.

# I. BACKGROUND

## A. Factual Background[1]

### *1. The Parties*

Petitioners Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds are employer and employee trustees of multiemployer labor-management trust funds operated and organized in accordance with the Employee Retirement Income Security Act ("ERISA"). Doc. 1 ¶ 4. Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund are trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code. *Id.* ¶ 5. Petitioner Carpenter Contractor Alliance of Metropolitan New York is a New York not-for-profit corporation. *Id.* ¶ 6. The Funds each maintain principal places of business in New York, New York. *Id.* ¶¶ 4–6.

Perrygreen LTD is incorporated in New York. Doc. 1 ¶ 7; Doc. 18 ¶ 7. The parties agree that all relevant times Perrygreen was an employer as defined in section 3(5) of ERISA, 29 U.S.C. § 1002(5), and that it was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Doc. 1 ¶ 7; Doc. 18 ¶ 7.

### *2. The Project Labor Agreement*

Perrygreen has provided work such as carpentry and masonry for public projects for the City of New York ("NYC"). Doc. 1 ¶ 10; Doc. 1-1 at 1–3. As part of these projects, Perrygreen agreed to be bound to "project labor agreements" ("PLAs"). *Id.* ¶¶ 11–12. The PLAs required Perrygreen to pay contributions on behalf of all employees covered by the PLAs directly to the designated union benefit funds, such as Funds in this case. *Id.* ¶ 14.

---

[1] The Courts takes the factual record from the Petitioners' petition and the attached exhibits, Perrygreen's answer to the petition and the attached exhibits, the Petitioners' counsel verified petition and the attached exhibits, the summons, and the executed summons.

In May 2023, Perrygreen signed Project Labor Agreement Letters of Assent ("LOAs") for various NYC public projects. *Id.* at ¶ 11. The LOAs bound Perrygreen to the NYC Agency Renovation & Rehabilitation Project Labor Agreement ("NYC PLA"). *Id.* The NYC PLA required Perrygreen to "pay on a timely basis contributions on behalf of all employees covered by this Agreement to those established jointly trusteed employee benefit funds designated in the applicable [collective bargaining agreement] . . . provided that such benefits are required to be paid on public works under any applicable prevailing wage law." Doc. 1-2 at 33.

Similarly, in April 2024, Perrygreen also signed a LOA for public projects for the Dormitory Authority for the State of New York ("DASNY"), which bound Perrygreen to the DASNY Renovation & Rehabilitation Project Labor Agreement ("DASNY PLA"). Doc. 1 ¶ 13. The DASNY PLA, like the NYC PLA, required Perrygreen to "pay on a timely basis contributions on behalf of all employees covered by this Agreement to those established jointly trusteed employee benefit funds designated in [a separate schedule] . . . provided that such benefits are required to be paid on public works under any applicable prevailing wage law." Doc. 1-4 at 27.

*3. The Collective Bargaining Agreement*

Pursuant to the NYC PLA and DASNY PLA, Perrygreen agreed to be bound by a collective bargaining agreement, the Independent Building Construction Agreement ("CBA"), with District Council of New York City and Vicinity of The United Brotherhood of Carpenters and Joiners of America (the "Union"). Doc. 1 ¶ 17; Doc. 1-5 at 1–3 (CBA). The CBA bound Perrygreen to the documents, policies, and regulations adopted by the Funds' Trustees. Doc. 1 ¶ 20. These include the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). *Id.* ¶ 21. Additionally, the CBA required Perrygreen to "make available" to the Funds "all pertinent books and records . . . required for an audit." Doc. 1-5 at 39–41.

In the case an audit found that Perrygreen had not paid the full amount to the Funds, the Collection Policy provided it with fourteen (14) days to challenge the audit and provide any additional documentation to support the challenge. Doc. 1-10 at 7. After the fourteen (14) day period expires, the collection policy submits the matter to the Fund Office or Collection Counsel. *Id.* at 6. If the audit determined the amount owed is "more than a de minimis amount prescribed by the Trustees then the Fund Office or Collection Counsel shall send . . . a Notice of Intent to Arbitrate (or, when appropriate, file a lawsuit in state or federal court, as set forth in Section VI) against the employer." *Id.*

In the case of arbitration, the CBA contained an arbitration clause that gave the arbitrator "full and complete authority to decide any and all issues raised" and that made arbitrator's award "final and binding." Doc. 1-5 at 45–46. The CBA also gave the arbitrator the "right to conduct an ex-parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration." *Id.* at 36.

*4. The Arbitration and Arbitration Award*

Pursuant to the CBA and Collection Policy, Petitioners conducted an audit of Perrygreen covering the period of June 1, 2002, to January 30, 2024. Doc. 1 ¶ 28; Doc. 1-11 (the "Audit"). The Audit showed that Perrygreen had failed to pay the Funds contribution in the principal amount of $122,948.16. Doc. 1-11 at 1. After Perrygreen did not pay the amount the Audit found, Petitioners started arbitration proceedings. Doc. 1 ¶ 30.

The arbitrator sent a notice of hearing to Perrygreen on April 29, 2025. Doc. 1-12. Perrygreen's counsel requested an adjournment to familiarize himself with the matter and to potentially reach a settlement. Doc. 1-13 at 2. Petitioners consented to the adjournment until May 28, 2025. *Id.* By May 28, 2025, the parties had reached an agreement regarding liability, but there were still in discussions regarding a payment plan. *Id.* At the May 28, 2025 hearing, Perrygreen's counsel "did not appear based upon the agreement that the Award in that amount would be held in abeyance for two weeks"

to allow time to finalize any settlement. *Id.* Perrygreen's counsel had access to the time of the hearing and the link needed to enter said hearing. Doc. 20-1: Doc. 20-2. The arbitrator had not receive notice of any settlement after the two-week abeyance period, and rendered an award (the "Award") in the amount of $196,552.53 on June 15, 2025. Doc. 1-13 at 2–3. The arbitrator based the Award on the amount the parties agreed "to be incorporated in an Award should a settlement not be reached." *Id.* at 2. Therefore, the arbitrator found the Award amount to be uncontested. *Id.* at 3.

The total amount of the award consists of $122,948.16 of the principal amount owed, $27,649.87 in interest, $24,589.63 in liquidated damages, $204.48 in promotional fund contributions, $10,647.64 in non-audit late payment interest, $8,012.75 in auditor fees, $1,500 in attorneys' fees, and $1,000 in arbitration costs. *Id.* at 2.

The arbitrator also included two additional provisions in the award. *Id.* at 3. First, in case Perrygreen failed to pay the Award amount within ten business days of the issuance of the award, "that interest and liquidated damages, as calculated by the Benefit Funds in accordance with the Collections Policy, shall continue to accrue from June 11, 2025." *Id.* at 3. Second, in the case Petitioners sought judicial enforcement of the Award, that accrued interest, liquidated damages, and the $405 court filing fee be included as part of the Award. *Id.*

Petitioners emailed both the Award and a demand letter to Perrygreen on June 17 and again on July 30, 2025. Doc. 1 ¶ 34; Doc. 1-14. Perrygreen states that it only became aware of the Award when they were served with the petition to confirm the arbitration award, Doc. 18-1 ¶ 10, which occurred on September 30, 2025. Doc. 7.

**B. Procedural History**

Petitioners commenced this action to confirm the arbitration award and seek attorneys' fees, cost, and post-judgment interest on September 18, 2025. Doc. 1; Doc. 5. Perrygreen was served with the petition on September 30, 2025. Doc.7.

Perrygreen responded to the petition to confirm the arbitration award on January 13, 2026. Doc. 18. In its answer, Perrygreen requests that the motion to confirm the arbitration award "be dismissed . . . or in the alternative the award be limited to actual contributions due." *Id.* at 6. The Court understands this answer to be a motion vacate, or in the alternative to modify, the award.

## II. LEGAL STANDARD

Confirmation of an arbitral award normally takes the form of a summary proceeding that converts a final arbitration award into a judgment of the court. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). The court is required to grant the award "unless the award is vacated, modified, or corrected." *Id.* (quoting 9 U.S.C. § 9). An application for a judicial decree confirming an award receives "streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

In order to promote the goals of arbitration, which consist of "settling disputes efficiently and avoiding long and expensive litigation," arbitration awards "are subject to very limited review." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citation omitted). It is not necessary that the arbitrator explain the rationale for the award, which "should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted). As long as there is "a barely colorable justification for the outcome reached," a court should enforce an arbitration award—even if it disagrees with it on the merits. *Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees International Union, A.F.L.-C.I.O.*, 954 F.2d 794, 797 (2d Cir. 1992) (citation omitted).

Accordingly, courts do not "review the arbitrator's decision on the merits," even where there are "allegations that the decision rests on factual errors or misinterprets the parties' agreement." *National Football League Management Council v. National*

*Football League Players Association*, 820 F.3d 527, 536 (2d Cir. 2016). Rather, when reviewing an arbitration award under the LMRA, the court "inquire[s] only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.*

Generally, "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co.*, 462 F.3d at 110. Thus, a party seeking vacatur of an arbitrator's decision "must clear a high hurdle." *Stolt-Nielson S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010). "Under the 'extremely deferential standard of review' that courts must apply, 'only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award,' which may be inferred from the record." *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educational & Industry Fund v. Robo Doors & Hardware Corp.*, No. 24 CIV. 37 (JPC), 2025 WL 573770, at *3 (S.D.N.Y. Feb. 21, 2025) (quoting *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 378–79 (2d Cir. 2023)).

## III. DISCUSSION

Petitioners request the Court (1) confirm the arbitration award, (2) award Petitioners the $196,5552.53 the arbitrator awarded in addition to pre-judgment interest, (3) award Petitioners $ 2,522.80 in attorneys' fees and 510.44 in costs arising out of the petition, and (4) award Petitioners post-judgment interest. Doc. 1 at 9–10.

Petitioners argue that the Award should be confirmed because the Arbitrator acted within the scope of his authority, and that Perrygreen's cross-motion to vacate, or in the alternative to modify, is time-barred. Doc. 21 at 4–10. Perrygreen requests the Court to dismiss Petitioners' motion to confirm the arbitration award because, in its view, the audit submitted to the arbitrator did not properly account for all the payments Perrygreen had made and because its position was prejudiced by its attorney not appearing at the

arbitration hearing. Doc. 18-1 ¶¶ 2, 8, 25. In the alternative, Perrygreen requests "the award is limited to actual contributions due." Doc. 18 at 6. The Court understands Perrygreen's request to dismiss Petitioners' motion, or in the alternative to limit the award, as cross-motion to vacate, or in the alternative, to modify the award.

**A. Statute of Limitations**

As a threshold matter, the Court determines that both the motion to vacate, or in the alterative to modify, the arbitration award are untimely. Congress did not provide a statute of limitations for § 301 of the LMRA, however courts in this Circuit determine the timeliness of a § 301 suit by referencing the appropriate state statute of limitations. *See Harry Hoffman Printing, Inc. v. Graphic Communications, International Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990). Courts should only depart from this rule "when a federal rule provides a closer analogy than the state limitations period and is more appropriate in light of the federal policies at stake." *Id.*

The New York statute of limitations applies when considering New York § 301 suits because the New York statute of limitations is "directly analogous" and more appropriate than the federal rule. See *id.* (concluding that the 90-day New York statute of limitations applies to § 301 of the LMRA petitions to vacate an arbitration award). The 90-day statute of limitation is borrowed from the New York Civil Practice Law and Rules ("CPLR") § 7511(a), which is the most appropriate state statute of limitations for challenging an arbitration award pursuant to § 301 of the LMRA. *Id.*; *New York Hotel & Gaming Trades Council, AFL-CIO v. 123 Washington LLC*, No. 24 CIV. 7213 (KPF), 2025 WL 2223248, at *10 (S.D.N.Y. Aug. 5, 2025).

CPLR 7511(a) states that "[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him." N.Y. C.P.L.R. 7511(a). Therefore, pursuant to CPLR 7511(a), the 90-day clock starts running after the party receives delivery of the arbitration award. CPLR § 2103, the NY rule that determines when a party has received an arbitration award, "provides that the statute of limitations

begins to run five days after mailing where service is made by mail." *Milk Wagon Drivers & Dairy Employees v. Elmhurst Dairy, Inc.*, 14 F. Supp. 3d 90, 95 (E.D.N.Y. 2014).

Notwithstanding the statute of limitations, New York state courts have interpreted CPLR 7511(a) to allow parties to raise affirmative defenses against a petition to confirm an arbitration award. *Id.* at 11. However, the Second Circuit has determined that this interpretation of CPLR 7511(a) is "inimical" to federal interest in quick and effective labor arbitration, and "[b]ecause we 'borrow no more than necessary' from the analogous New York statute of limitations . . . we hold that grounds for vacating an arbitration award may not be raised as an affirmative defense" after the statute of limitation has lapsed. *See Local 802, Associated Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *West v. Conrail*, 481 U.S. 35, 39–40 (1987)).

Here, Perrygreen did not file its cross-motion until January 13, 2026. Doc. 18. Petitioners argue the 90-day statute of limitations started at the latest on August 4, 2025, five days after they mailed the arbitration award to respondent on July 30, 2025, pursuant to CPLR § 2103 which adds five days to the statutes of limitations after mailing. Doc. 21 at 9; N.Y. C.P.L.R. § 2103(b)(2). Perrygreen states that it only learned of the award after it was served with the petition, which happened on September 30, 2025. Doc. 18-1 ¶ 10; Doc. 7. The Court determines, following CPLR § 2103(b)(2), that the statute of limitations started running on August 4, 2025, five days after Petitioners mailed the arbitration award.

However, even assuming that September 30, 2025, when Perrygreen was served with the petition, is the date the statute of limitations started, the 90-day period expired on December 29, 2025. Because Perrygreen did not submit its motion to vacate, or in the alternative to modify, the arbitration award until January 13, 2026, the Court finds that

Perrygreen's motion was untimely. The cross-motion to vacate, or in the alternative to modify, is denied.

**B. Confirmation of the Award**

The Court finds that the arbitrator acted within the scope of his authority in issuing the arbitration award. *National Football League Management Council*, 820 F.3d at 536. Here, the arbitrator acted within the scope of the CBA, to which Perrygreen was indisputably bound. Doc. 18-1 ¶ 4. The CBA provided that the parties could seek arbitration of "any dispute or disagreement . . . "concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due." Doc. 1-5 at 45–46. It also grants the arbitrator "full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy including, but not limited to, monetary damages." *Id.* The CBA additionally provides that "[t]he arbitrator's award in this regard shall be final and binding upon the parties." *Id.*

In his opinion and award, the arbitrator determined that the Collection Policy mandated "periodic audits of the books and records of contributing employers by independent outside firms" and that after the end of the audit process, Perrygreen did not pay the Petitioners the amount due. Doc. 1-13 at 2. Additionally, the arbitrator concluded that the parties had reached agreement as to liability and that they were discussing a payment plan. *Id.* Accordingly, the arbitrator found liability based on the parties agreeing to the amount of the award. *Id.* Based on these considerations, the Arbitrator plainly acted withing the scope of his authority in issuing an award for petitioners based on the record at the time, in the absence of settlement by the parties, and had a colorable justification for the outcome reached.

Perrygreen challenges the confirmation of the arbitration award on two grounds: "that the award should not be confirmed as a full and complete audit was never performed" and that "Respondent did not have the opportunity to defend itself in this matter" which, in its view, "severely prejudiced" its position. Doc. 18-1 ¶¶ 2, 25. The

Court understands the first argument to challenge the factual basis of the audit submitted to the arbitrator and the second argument to challenge the arbitration hearing as fundamentally unfair given that Perrygreen's counsel did not appear.

To the extent Perrygreen is making these arguments, it failed to timely contest the award before the statute of limitations expired and thus those affirmative defenses are time barred. *See Parker Meridien*, 145 F.3d at 89 (holding "that grounds for vacating an arbitration award may not be raised as an affirmative defense after the . . . statute of limitations governing applications to vacate an arbitration award has lapsed").

Even if the Court were to consider those defenses on the merits, Perrygreen's arguments do not meet the high burden required to vacate an arbitration award. *D.H. Blair & Co.*, 462 F.3d at 110.

Perrygreen's challenge based on factual mistakes on the audit submitted to the arbitrator does not meet the high burden to vacate an award. The court is "not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors . . . but inquire only as to whether the arbitrator acted within the scope of his authority." *Id.* Therefore, even though Perrygreen submits documentation to challenge the Audit, *see* Docs. 18-1–18-4, the arbitrator's factual determinations based on the uncontested agreement between the parties to the amount in liability is not reviewable.

Furthermore, even if Perrygreen had not agreed to the amount in liability and the arbitrator had based his decision on what Perrygreen views as an incomplete audit, "it is not up to this Court" to reexamine the merits of the award based on new evidence that challenges the award's factual predicates. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Co-op., Pension & Welfare Funds v. Thalle/Transit Construction Joint Venture*, No. 12-CV-5661 JFB ARL, 2014 WL 3529728, at *4–5 (E.D.N.Y. July 15, 2014) (finding that the Court could not review the merits of an arbitration award even when presented with new evidence that challenged

the correctness of the audit the arbitrator used in making the award even when the party did not appear at hearing). The fact that Perrygreen's counsel did not appear at the hearing, and therefore did not present Perrygreen's factual challenges to the audit, does not allow the Court to now second guess the arbitrator's award. *Id.*

Because the arbitrator based his decision on the parties' agreement as to liability at the time of the hearing and the Court cannot review the factual merits of the award even when presented with new evidence that challenges those factual merits, there is a "colorable justification" for the Award amount the arbitrator decided. *D.H. Blair & Co.*, 462 F.3d at 110.

In regard to the argument that the hearing was fundamentally unfair because counsel was not present, Perrygreen fares no better. "An arbitrator can formulate such procedures as he sees fit as long as the proceedings are not 'fundamentally unfair.'" *Ottawa Office Integration Inc. v. FTF Business Systems, Inc.*, 132 F. Supp. 2d 215, 220 (S.D.N.Y. 2001) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir. 1997)).[2] A fundamentally unfair arbitration hearing can result if the arbitrator does not give each party an adequate opportunity to present their case. *See Alexander Julian, Inc. v. Mimco, Inc.*, 29 F. App'x 700, 703 (2d Cir. 2002). Failure of counsel to appear does not necessarily make an arbitration hearing fundamentally unfair. *See id.* (concluding that counsel's failure to appear "without taking precautions against prejudicing the interests of his client" did not make a fundamentally unfair proceeding).

The failure of Perrygreen's counsel to appear did not make the hearing fundamentally unfair. Specifically, the CBA explicitly gives the arbitrator the right to

---

[2] These cases are referring to arbitrators under the United States Arbitration Act ("FAA"). Even though the FAA does not apply to suits brought pursuant to § 301 of the LMRA, "federal courts may look to the FAA for 'guidance in labor arbitration cases.'" *New York City District Council of Carpenters v. Gotham Installations, Inc.*, No. 13 CIV. 5659 RJS, 2013 WL 5943986 (S.D.N.Y. Oct. 25, 2013) (quoting *United Paperworkers International Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 (1987).

conduct an *ex parte* hearing and render an award based on the testimony before him when one of the parties fails to appear for a scheduled arbitration. Doc. 1-5 at 36. Perrygreen's counsel was aware of the time of the hearing and also had access to the link needed to enter the virtual hearing. Doc. 20-2; Doc. 20-3. Therefore, Perrygreen had an adequate opportunity to present its case to the arbitrator. Moreover, Perrygreen's counsel's failure to appear was the result of his agreement with Petitioners' counsel to hold any award in abeyance for two weeks, which time had expired, and not due to lack of opportunity. Doc. 1-13 at 2; Doc. 20-2 at 1–2.

Because the CBA explicitly allowed the arbitrator to hold the hearing if a party failed to appear, because Perrygreen's counsel had adequate opportunity to present Perrygreen's case at the hearing, and because the arbitrator held the hearing *ex parte* due to an agreement between the parties, the Court determines the hearing was not fundamentally unfair

In sum, because the arbitrator acted within the scope of his authority, and because there is at least "a barely colorable justification for the outcome reached" based on the record, none of Perrygreen's counterarguments disturb the Award. *Id.* Accordingly, the Court grants the petition to confirm the arbitration award.

## IV. CONCLUSION

For the reasons set forth above, Petitioners' motion to confirm the Award is GRANTED, and Perrygreen's cross-motion to vacate or modify the arbitration award is DENIED.

Petitioners are instructed to submit their fee application and corresponding billing records to the Court by December 10, 2026.

It is SO ORDERED.

Dated: November 19, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.